IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 06-cv-02546-LTB-PAC

PATRICK VAN ZANEN and VICKI VAN ZANEN, on behalf of themselves and all others
similarly situated,

     Plaintiffs,

v.

QWEST WIRELESS, L.L.C., a Delaware Corporation; QWEST SERVICES CORPORATION,
a Colorado corporation; and QWEST COMMUNICATIONS INTERNATIONAL, INC., a
Delaware corporation,

     Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

Babcock, C.J.

     The defendants, Qwest Wireless, L.L.C., Qwest Services Corporation, and Qwest

Communications International, Inc. (collectively, "Qwest") move to dismiss the Complaint of the

plaintiffs, Patrick Van Zanen and Vicki Van Zanen, who assert claims on their own behalf and on

behalf of a putative class, pursuant to Fed. R. Civ. P. 23. The motion is adequately briefed and

oral argument would not materially aid its resolution. For the reasons stated below, I GRANT

the motion.

**I. Allegations**

     The Van Zanens allege substantially the following. Qwest, a provider of wireless

telephone service operating in fourteen states, including Arizona and Colorado, offers to its

customers the option of purchasing wireless telephone equipment insurance ("Handset

Insurance").  Lock/Line, LLC, also known as Asurion Protection Services, L.L.C. ("Lock/Line"), underwrites and administers the Handset Insurance policies, which cover replacement of personal wireless equipment in the event the equipment is lost, stolen, or damaged.  Monthly premiums fall within $3.95 and $4.99, at the extremes.

Qwest sells the Handset Insurance on Lock/Line's behalf and collects a commission for its efforts.  It offers Handset Insurance coverage to new customers who contact it over the telephone, in one of its stores, or on the internet, and to existing customers who contact Qwest for new services and upgrades to existing services.  Additionally, Qwest issues written advertisements extolling the virtues of Handset Insurance.  In certain of its advertisements, Qwest characterizes the commission it retains as a "billing and administration fee paid to Qwest." Complaint ¶ 25.

All fourteen states in which Qwest vends services allegedly require all those selling insurance to obtain a license.  The Zanens allege that Qwest is not licensed to sell insurance and therefore is prohibited from doing so in all fourteen states.

The Van Zanens, spouses residing in Arizona, employed Qwest wireless service when, in May, 2005, Mrs. Van Zanen called Qwest to purchase a new wireless telephone.  During the call, a Qwest representative convinced Mrs. Van Zanen to purchase Handset Insurance.  The representative indicated that coverage extended to phones lost or stolen.  Thereafter, the Van Zanens have paid a monthly premium of $4.99, which Qwest bills, along with other services, on the Van Zanens' monthly statement.  Mrs. Van Zanen had no contact with agents of Lock/Line.

Mrs. Van Zanen presently lost her wireless telephone.  The Complaint states that she "tried to make a claim under the Handset Insurance," Complaint ¶ 37, but does not indicate what

2

prevented her from doing so.  Mrs. Van Zanen was allegedly advised – by whom is not revealed – that "the Handset Insurance indemnified her against lost wireless telephone equipment only if she actually reported the lost phone to the police as if it had been stolen."  Complaint ¶ 37.  It is not clear from the Complaint whether this suggestion was intended to recommend mendacity or merely the manner in which a report was to be made.

The Complaint does not contain the terms of coverage.  Therefore, one cannot discern from the allegations who, if anyone, misrepresented the terms of the Handset Insurance policy. Furthermore, the Van Zanens make no claims against Lock/Line and expressly disavow any intention to cancel or relinquish their Handset Insurance coverage.  Nor do they purport to assert a claim for fraud.  However, they allege that Qwest concealed the true nature of the compensation it retained on sales of Handset Insurance, characterizing as an administrative fee what amounted to a sales commission.  This fraud, they assert, tolled any applicable limitations periods.  In addition, Qwest purportedly engages in continuing violations of the licensing provisions.

The Van Zanens assert four claims (claims 1, 2, 29, and 30) on their own behalf: violation of Arizona's insurance licensing statute, Ariz. Rev. Stat. § 20-282; violation of Arizona's statute prohibiting compensation paid to an unlicensed insurance producer, Ariz. Rev. Stat. § 20-298; declaratory and injunctive relief; and unjust enrichment and imposition of a constructive trust. Claims 3 through 28 allege violations of statutes of states other than Arizona, on behalf of the putative class.

## II.  Personal claims

The parties agree that Arizona law governs the claims that the Van Zanens assert on their own behalf.  Qwest suggests two grounds on which to dismiss these claims.  First, it argues that the insurance licensing statute creates no private cause of action.  Second, it asserts that, although failure to obtain a license can serve as a defense to an action to obtain fees, it cannot serve as a basis for an action to obtain restitution of monies spent in exchange for services provided.  The Van Zanens argue, alternatively, that the statute creates a private right of action or, at the least, does not negate their unjust enrichment claim.  I agree with Qwest that the statute creates no private right of action.  Furthermore, the Van Zanens have stated no claim for unjust enrichment.

The parties do not cite, and I have not found, any decision of the Arizona Supreme Court on the question whether the insurance licensing statutes in that state create a private cause of action against an unlicensed insurance vender.  My task is to determine what decision Arizona's highest court would make if faced with the same facts and issue.  *Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006).  Though the parties cite numerous cases, a handful of Arizona authorities dispose of the question.

### A.      No private right of action

Analysis must begin with review of the statutes Qwest is alleged to have violated.  "A person shall not sell, solicit or negotiate insurance in this state for any class or classes of insurance unless the person is licensed for that line of authority in accordance with this article."  Ariz. Rev. Stat. § 20-282.  "A person shall not accept a commission, service fee, brokerage or other valuable consideration for selling, soliciting or negotiating insurance in this state if that person is required to be licensed under this article and is not so licensed."  Ariz. Rev. Stat. § 20-298(B).  Qwest

4

concedes for the purpose of this motion, as it must under Rule 12(b)(6) – I am obliged to read the allegations in the light most favorable to the Van Zanens – that it has violated these provisions.

Violation of the licensing provision predicates administrative recourse.

> If the director [of insurance] has cause to believe that any person is violating or about to violate § 20-282, ... the director may order the person to cease and desist and, through the attorney general, may cause a complaint to be filed in the superior court in Maricopa county to enjoin and restrain the person from continuing the violation, engaging in the violation or doing any act in furtherance of the violation. ... If the director, through the attorney general, causes a complaint to be filed, the superior court in Maricopa county has jurisdiction of the proceeding and may make and enter an order or judgment awarding the preliminary or final relief as in its judgment is proper.

Ariz. Rev. Stat. § 20-292.  The statutes are silent on the question of private causes of action to enforce their provisions.

In determining whether a statute creates a private cause of action as remedy for its violation, Arizona courts look to the Restatement.  *Napier v. Bertram*, 954 P.2d 1389, 1391 (Ariz. 1998).  The Restatement provides,

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

Restatement (Second) of Torts § 874A (1979).  A comment further explains, "If the court determines that the legislative body did actually intend for civil liability to be imposed or not imposed, whether the intent is explicit or implicit, then the court should treat the situation as if it had expressly so provided."  *Id.* at cmt. c.

Thus, Arizona courts concern themselves primarily with the purpose of the legislation, considering "the context of the statutes, the language used, the subject matter, the effects and

consequences, and the spirit and purpose of the law." *Napier*, 954 P.2d at 1391 (*quoting Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1121 (Ariz. 1974)). Indeed, Arizona courts invariably find the purpose of the statute, whether express or implied, to be dispositive of the question whether the statute creates a private cause of action. *Napier*, 954 P.2d at 1391; *Lancaster v. Arizona Bd. of Regents*, 694 P.2d 281, 287 (Ariz. Ct. App. 1984); *Douglas v. Governing Bd. of Window Rock Consol. School Dist. No. 8*, 78 P.3d 1065, 1068 (Ariz. Ct. App. 2003); *Bentivegna v. Powers Steel & Wire Prods., Inc.*, 81 P.3d 1040, 1046-1047 (Ariz. Ct. App. 2003).

The *Bentivegna* decision is particularly instructive. In that case, the plaintiffs retained the defendant, a subcontractor who possessed an insufficient license, to erect the metal portions of a warehouse. *Bentivegna*, 81 P.3d at 1042. The defendant completed the work and received its contracted-for compensation. *Id.* When defects in the edifice became apparent, the plaintiffs sued, seeking, among other remedies, restitution of the entire contract price. *Id.* at 1042-1043. The plaintiffs reasoned that the defendant's insufficient licensure prevented the defendant from retaining the monies paid. *Id.* at 1043. They noted that the licensing statute prevented contractors from maintaining any action to collect compensation for work performed without first proving that it was properly licensed to perform the work. *Id.* at 1043, 1045. The court rejected this argument, stating,

> Our supreme court has held that the purpose of [the contractor licensing statute] is not to penalize contractors, but "to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." To promote this purpose, the supreme court has allowed contractors to show that they have substantially complied with the licensing statutes before [the enforcement provision] is triggered. Thus, even unlicensed contractors are not automatically barred from bringing an action for amounts due.

Similarly, we do not believe the purpose of [the statute] is furthered by requiring contractors to automatically pay restitution simply because they are unlicensed.

Contrary to the [plaintiffs'] assertions, allowing unlicensed contractors to keep sums they have been paid, while prohibiting them from suing to collect sums they have not been paid, will not undermine the protective function of the statute. If a customer is dissatisfied, he is less likely to pay the full contract price. Preventing the unlicensed contractor from suing, therefore, helps protect the public from lawsuits by unlicensed persons who perform substandard work. It also encourages those who would act as contractors to obtain a license so that they can sue to collect money from nonpaying clients. On the other hand, if an unlicensed person performs work and is paid for it, the customer then has a choice: if he is happy with the work done, he may allow the unlicensed contractor to keep the funds; if he is unhappy with the work done, he may pursue his legal remedies by suing for damages.

*Id.* at 1046-1047 (citations omitted).

Similarly, in *Colberg v. Rellinger*, 770 P.2d 346 (Ariz. Ct. App. 1988), the court rejected an argument that the Arizona contractor licensing statutes created a private claim against an individual agent of a licensee. The court found "no supporting indication of legislative intent" in or concerning the statute. *Colberg*, 770 P.2d at 352. Therefore, it "conclude[d] that the legislature intended no private right of action against qualifying parties." *Id.*

In *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 682 P.2d 388 (Ariz. 1984), the Arizona Supreme Court provided a useful summary of the purposes of the insurance licensing statutes.

A person in the business of selling insurance holds himself out to the public as being experienced and knowledgeable in this complicated and specialized field. The interest of the state that competent persons become insurance agents is demonstrated by the requirement that they be licensed by the state, ... pass an examination administered by the state, ... and meet certain qualifications, ... . An insurance agent performs a personal service for his client, in advising him about the kinds and extent of desired coverage and in choosing the appropriate insurance contract for the insured. Ordinarily, an insured will look to his insurance agent, relying, not unreasonably, on his expertise in placing his insurance problem in the agent's hands. ... When an insurance agent performs his services negligently, to the insure's (sic) injury, he should be held liable for that negligence just as

> would an attorney, architect, engineer, physician or any other professional who negligently performs personal services.
>
> The principle involved here is simply that a person who holds himself out to the public as possessing special knowledge, skill or expertise must perform his activities according to the standard of his profession. If he does not, he may be held liable under ordinary tort principles of negligence for the damage he causes by his failure to adhere to the standard.

*Darner Motor Sales*, 682 P.2d at 402-403 (citations omitted).

In this case, there is no allegation that Qwest performed its insurance sales efforts negligently or with any other level of malfeasance. The Van Zanens do not assert that Qwest wrongly sold them Handset Insurance. Indeed, they expressly disclaim any desire or intention to cancel their Handset Insurance coverage. They do not allege that Qwest sold them insurance that they did not want or would not otherwise have purchased. Nor do they allege any dissatisfaction with the coverage, claims procedures, or other specifications of the policy. Nothing appears in the Complaint or the Van Zanens' brief to suggest that their purchase of Handset Insurance was anything other than an arms-length transaction, in which they obtained a service of value to them in exchange for a fair market price. I need not decide whether the statute creates a private right of action generally. It is sufficient that it creates no right of action in this case. Perhaps one can conceive of a case that implicates the concerns expressed in *Darner Motor Sales*. This is not that hypothetical case.

*Sparks v. Republic National Life Insurance Co.*, 647 P.2d 1127 (Ariz. 1982), *cert. denied*, 459 U.S. 1070, 103 S. Ct. 490, 74 L. Ed. 2d 632 (1982), and *Sellinger*, *supra*, are not contrary. In those cases, the applicable statutes expressly contemplated personal causes of action by private parties. *Sparks*, 647 P.2d at 1139; *Sellinger*, 521 P.2d at 1122. No such formulation appears in the statutes at issue here.

The Van Zanens reason from the director's discretion under Ariz. Rev. Stat. § 20-292 to the conclusion that private causes of action must be allowed against unlicensed venders of insurance policies whom the director resolves not to prosecute.  However, they point to nothing in the statutes from which I might infer that the Arizona legislature intended to mitigate the director's discretion, expressly provided for, in this or any other manner.  The claims under the Arizona licensing statute must be dismissed.

### B.      No right to restitution

Citing *State v. Arizona Pension Planning*, 739 P.2d 1373 (Ariz. 1987); *Transamerica Financial Corp. v. Superior Court In and For Maricopa County*, 761 P.2d 1019 (Ariz. 1988); *Hayes v. Continental Insurance Co.*, 872 P.2d 668 (Ariz. 1994) and other decisions, the Van Zanens argue that the Arizona licensing statute in no way abrogated their common law claim for unjust enrichment.  This argument misses the manifestly obvious point that the Van Zanens have no claim for unjust enrichment in the first place, under either Arizona or Colorado law.

Unjust enrichment in Colorado consists of three elements.  The Van Zanens must allege that, (1) at their expense, (2) Qwest received a benefit (3) under circumstances that would make it unjust for Qwest not to make restitution.  *DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119-120 (Colo. 1998).  Similarly, under Arizona law, the Van Zanens must allege: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy."  *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002).

9

Leaving aside whether Qwest's collection of commissions for sales of Handset Insurance was unjust, the Van Zanens have suffered no detriment, expense, or impoverishment as a result. Instead, they obtained a valuable product for which they bargained and which they intend to keep.

The Van Zanens attempt to split a hair, arguing that, though Lock/Line might permissibly retain the premium for the Handset Insurance, Qwest should disgorge the commission it retained for selling the policy.  However, as set forth above, the Van Zanens are satisfied with their purchase of the policy.  They do not dispute – in fact, they allege – that Qwest introduced to them the Handset Insurance policy and that they would not have obtained this salutary product but for Qwest's efforts.  Thus, whether or not Qwest was authorized under Arizona law to sell the policy, the Van Zanens utilized Qwest's sales and administration services.  They seek to retain the benefit of those services while recovering the price paid for them.  The unjust enrichment claim must be dismissed.

**III.  Class action claims**

Because the Van Zanens fail to state any claims on their own behalf, their class-action claims must be dismissed.  *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1213 (10th Cir. 2006).

Accordingly, Qwest's motion to dismiss [#4] is GRANTED and the Complaint is dismissed.

Dated: April   19  , 2007 in Denver, Colorado.

BY THE COURT:


    s/Lewis T. Babcock
Lewis T. Babcock, Chief Judge